```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


TIMOTHY SULLIVAN and            §
MICHAEL PROSSER,                §
                                §
          Petitioners,          §
                                §
v.                              §
                                §   CIVIL ACTION NO. H-06-2948
EL PASO CORPORATION, EL PASO    §
MARKETING ENERGY GAS            §
CORPORATION, and EL PASO        §
MERCHANT ENERGY GAS CORPORATION,§
                                §
          Respondents.          §
```

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Petitioners' Motion for Summary Judgment (Docket Entry No. 11). For the reasons stated below, petitioners' motion will be denied, and the arbitration award will be confirmed.

### I.  Background

In 1998 petitioners, Timothy Sullivan and Michael Prosser, entered into an employment agreement with respondents (the "1998 Letter Agreement").[1] Pursuant to this agreement, petitioners were to receive specified salaries, a signing bonus, and a minimum bonus for the first year of employment.[2] Under section 7 of the 1998

---

[1] Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit A, Arbitrator's Final Award, p. 4.

[2] Id., Exhibit C, 1998 Letter Agreement, p. 2.

Letter Agreement petitioners were also to be paid "phantom equity" based upon the percentage of net operating income attributable to petitioners' work after the end of any fiscal year in which the cumulative net operating income reached $10,000,000.[3]  Section 13 of the 1998 Letter Agreement also provided that respondents could terminate the employment relationship without cause if petitioners were paid their remaining base salaries for the year, their guaranteed initial bonuses and signing bonuses, and any accrued and unpaid phantom equity payments.[4]

In the Fall of 1999 negotiations began between petitioners and respondents to revise the phantom equity clause of the employment agreement.[5]  Respondents told petitioners that the phantom equity agreement may have to be disclosed in publicly filed financial statements and that the investment community did not look favorably upon such agreements.[6]  Petitioners were unreceptive to respondents' desire to change the agreement.[7]  Eventually respondents threatened to terminate the employment agreement altogether if petitioners did not agree to void the phantom equity clause.[8]  In

---

[3] Id. pp. 4-5.

[4] Id. p. 9.

[5] Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit A, Arbitrator's Final Award, pp. 5-6.

[6] Id.

[7] Id. at 6.

[8] Id. at 7-8.

-2-

May of 2000 Supplemental Agreements were signed, which extinguished petitioners' future claims for phantom equity under the 1998 Letter Agreement and replaced them with a right to a series of bonus payments.[9] No phantom equity had accrued as of May of 2000, but it was apparent that phantom equity would probably be due in 2001 for the year 2000 based on the closing of a pending transaction.[10] Petitioners allege that they signed the Supplemental Agreements with the understanding that they would be paid through the discretionary bonus plan as much as they would have received under the phantom equity provisions of the 1998 Letter Agreement.[11] Petitioners were subsequently disappointed with the discretionary bonuses they received for the year 2000 and the years thereafter. Prosser resigned at the end of September 2001 and Sullivan resigned in February of 2003.[12]

Petitioners filed a demand for arbitration in March of 2004 claiming that they were victims of fraudulent inducement and duress and sought to have the Supplemental Agreements declared void. After a four-day hearing the arbitrator concluded that respondents' statements regarding the potential need to disclose the phantom equity agreements were false, that they were made either knowingly

---

[9] Id. at 8-9.

[10] Id. at 9.

[11] Petitioners' Motion for Summary Judgment, Docket Entry No. 11, p. 7.

[12] Id., Exhibit A, Arbitrator's Final Award, pp. 9-10.

or recklessly with regard to their truth or falsity, and that respondents intended to induce petitioners to act upon those representations.[13]  However, the arbitrator also found that petitioners did not rely on these statements in signing the Supplemental Agreements and, alternatively, any reliance would have been unjustifiable.[14]  The arbitrator also concluded that the threats to terminate petitioners' employment did not constitute duress because respondents had the right to terminate the 1998 Letter Agreement under section 13.[15]  The arbitrator entered a Final Award for the respondents on June 20, 2006.

Petitioners brought this action seeking to vacate the arbitrator's award.[16]  They now move the court to enter summary judgment on the grounds that the arbitrator manifestly disregarded clearly applicable law in finding for the respondents on their fraudulent inducement and duress claims and that the award is contrary to public policy.[17]

## II. Legal Standard

A court's review of an arbitration award is deferential, and the award can be vacated only on "very narrow grounds." Brabham v.

---

[13] Id. at 11-12.

[14] Id. at 13.

[15] Id. at 14.

[16] Application to Vacate Arbitration Award, Docket Entry No. 1.

[17] Petitioners' Motion for Summary Judgment, Docket Entry No. 11.

A.G. Edwards & Sons, Inc., 376 F.3d 377, 380 (5th Cir. 2004). The Fifth Circuit has recognized "manifest disregard for the law" as a non-statutory ground for vacating an arbitrator's decision. Williams v. Cigna Fin. Advisors Inc., 197 F.3d 752, 759 (5th Cir. 1999). Manifest disregard of the law means

> more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it. Even if the arbitrator did manifestly disregard the law, a second step of the manifest disregard analysis requires that before an arbitrator's award can be vacated, the court must find that the award resulted in a "significant injustice."

Kergosien, 390 F.3d 346, 355 (5th Cir. 2004) (internal quotations omitted). Judicial review under this standard is "extremely limited" and in line with the "well-established deference to arbitration as the favored method of settling disputes." Apache Bohai Corp. LDC v. Texaco China Bv, No. 05-20413, 2007 U.S. App. LEXIS 4403, at *18 (5th Cir. Feb. 27, 2007) (quoting Prestige Ford v. Ford Dealer Computer Servs., Inc., 391, 395 (5th Cir. 2003)). An arbitrator's factual findings are unreviewable. Apache Bohai Corp., 2007 U.S. App. LEXIS 4403, at *25; Kergosien, 390 F.3d at 358.

### III.  Analysis

**A.  Duress Claim**

Petitioners argue that the arbitrator's reliance on Ulmer v. Ulmer, 162 S.W.2d 944 (Tex. 1942), for the proposition that "it is

-5-

never duress to threaten that which a party has a legal right to do" was a manifest disregard of the law because a subsequent state appellate court opinion held <u>Ulmer</u> to be inapplicable in an employment context.[18]  Specifically, petitioners argue that the arbitrator ignored petitioners' citation to <u>Mitchell v. C.C. Sanitation Co.</u>, 430 S.W.2d 933, 937 (Tex. Civ. App. -- Houston [14th Dist.] 1968, writ ref'd n.r.e.), in which the Fourteenth Court of Civil Appeals noted the <u>Ulmer</u> holding and then stated:

> Although an employer, acting singly, has the undoubted right to discharge an employee or one of his family, the coercion arising from a threat to do so, when employed as a means to force the employee to sign a release of an action which he has instituted against him or another employer is unlawful, and, under circumstances showing that such means in fact overcame the employee's resistance and will, may constitute duress.

Petitioners argue that, like the employee in <u>Mitchell</u>, they were subject to threats of discharge and forced to give up rights under the 1998 Letter Agreement.[19]  Petitioners argue that <u>Mitchell</u> was cited to the arbitrator, "who deliberately chose to ignore" it, constituting a manifest disregard of the law.[20]

The court is not persuaded that the arbitrator manifestly disregarded the law.  First, the <u>Mitchell</u> court only stated that

---

[18]Petitioners' Motion for Summary Judgment, Docket Entry No. 11, p. 11.

[19]<u>Id.</u> at 13-14.

[20]<u>Id.</u> at 15.

such a scenario "may" constitute duress.  Second, the circumstances of this dispute do not resemble the facts at issue in <u>Mitchell</u>.[21] In <u>Mitchell</u> the employee was a truck driver who was threatened with the loss of his job if he did not sign a release for personal injury claims on the spot.  The court noted that the parties "stood on no equal footing, there was great economic disparity between them, and there was no equality of bargaining positions." <u>Mitchell</u>, 430 S.W.3d at 938.  Here, the arbitrator found that petitioners were well-educated, sophisticated businessmen who negotiated contracts on a regular basis and had the benefit of legal representation during the lengthy negotiations.[22]  The arbitrator's interpretation of Texas law is therefore not so plainly incorrect as to be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator."  The court concludes that the petitioners have not met their burden with regard to this nonstatutory basis for vacatur.

**B.    Fraudulent Inducement Claim**

Petitioners next argue that the arbitrator acted in manifest disregard of the law with regard to their fraudulent inducement of

---

[21]Petitioners argue that these factual distinctions are irrelevant.  Petitioners' Reply to Respondents' Opposition to Petitioners' Motion for Summary Judgment, Docket Entry No. 16, pp. 3-4, nn.2, 5.  As discussed, <u>infra</u>, the court disagrees.

[22]Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit A, Arbitrator's Final Award, p. 13.

contract claim.[23] The arbitrator found that the statements made by respondents regarding the need to publicly disclose the phantom equity agreements were "either false or made recklessly without knowledge of their truth or lack thereof."[24] The arbitrator also found that respondents made these statements with the intent to induce petitioners to act upon the representation.[25] With regard to the last element of the claim, however, "after a close scrutiny of the testimony and documentary evidence" the arbitrator found that petitioners did not actually rely on respondents' false statements in reaching their decision to sign the Supplemental Agreements.[26] The arbitrator reasoned that petitioners were well educated, sophisticated businessmen with the benefit of legal counsel who understood that the phantom equity had not yet accrued and that respondents had the right to terminate the 1998 Letter Agreement altogether if they chose to do so. Signing the Supplemental Agreements, therefore, was simply "the best choice available to them under the circumstances."[27]

---

[23]Petitioners' Motion for Summary Judgment, Docket Entry No. 11, p. 16.

[24]Id., Exhibit A, Arbitrator's Final Award, p. 11.

[25]Id. at 12.

[26]Id. at 13, 15.

[27]Id.

Petitioners argue that this finding is "unsupported by the arbitrator's own factual findings."[28] They contend that because the arbitrator found that the petitioners had no desire to alter the 1998 Letter Agreement and only did so after respondents threatened to end the employment relationship, they "had no choice but to rely upon the statements of [respondents] that the change was necessitated by 'poor optics' and that [petitioners] would receive the same compensation under the Supplemental Employment Agreements as they would receive under their right for Phantom Equity. [Petitioners] relied upon these representations because they had no other choice."

The court is not persuaded by petitioners' argument. First, there is nothing inconsistent with the arbitrator's findings. The fact that the petitioners had "no choice" but to sign the Supplemental Agreements because respondents were free to terminate the 1998 Letter Agreement does not necessitate the conclusion that petitioners relied on respondents' statements regarding public disclosure of the phantom equity agreement. Second, petitioners conflate the statements that the arbitrator found were made

---

[28]Petitioners' Motion for Summary Judgment, Docket Entry No. 11, p. 16. Petitioners also argue that the arbitrator's alternate finding, that even if petitioners had relied on the statements, such reliance was unjustified, was a manifest disregard of the law. Id. at 17. However, because the court concludes that the arbitrator's finding that there was no reliance was not a manifest disregard of the law, and this finding is sufficient to support the arbitrator's award, the court will not address this argument.

knowingly and/or recklessly false.  The arbitrator found that the statements regarding the need for public disclosure of the phantom equity agreement were made falsely, not any assurances that petitioners would be compensated through the discretionary bonus program to the same extent they would have been compensated under the phantom equity provision.  Instead, the arbitrator found that respondents "probably expected to be able to reward [petitioners] for the value they added."[29]  Last and most importantly, this court has no occasion to review the arbitrator's factual findings.  "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, fact-finding does not provide a basis for a reviewing court to refuse to enforce the award."  Kergosien, 390 F.3d at 358 (internal quotations omitted).  The court therefore concludes that the arbitrator did not manifestly disregard the law in making these findings.

## C.   Public Policy

Petitioners' final argument is that the arbitrator's award violates public policy because it "encourages fraud and rewards the fraudster at the expense of the victim of fraudulent behavior."[30]

---

[29] Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit A, Arbitrator's Final Award, p. 15.

[30] Petitioners' Motion for Summary Judgment, Docket Entry No. 11, p. 20.

Petitioners cite Koral Industries v. Security-Connecticut Life Ins. Co., 802 S.W.2d 650, 651 (Tex. 1990), for the proposition that "[w]hen one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care."[31] However, the arbitrator expressly found that petitioners did not rely on respondents' false statements regarding the need to disclose the phantom equity agreement. They were not, therefore, "induced to enter into a contract by fraudulent misrepresentations."

Petitioners argue that "the misrepresentation by [respondents] which was the focus of this Arbitration and which the arbitrator found to have occurred was [respondents'] false assurances to [petitioners] that they would receive the same compensation to which they would be entitled under the 1998 Letter Agreement."[32] The record does not support this argument. The final award states that respondents "probably expected to be able to reward [petitioners] for the value they added" and that petitioners "realized that signing the Supplemental Employment Agreements extinguished their contractual right to phantom equity compensation and left them only with [respondents'] assurances - uncertain,

---

[31] Id.

[32] Id. at 22.

discretionary, and subject to the vagaries of the overall economic performance of [the company]."[33]  The arbitrator therefore determined that these assurances were not falsely made and did not induce petitioners into signing the Supplemental Agreements. Instead, the arbitrator found that petitioners signed the agreements because, legally, they were not yet entitled to phantom equity payments and respondents were within their right to terminate the 1998 Letter Agreement.  Because petitioners were not victims of fraudulent inducement, this policy argument is inapplicable.

**D.   Confirmation of Arbitration Award**

Respondents have requested that the court confirm the arbitration award.[34]  Section 9 of the Federal Arbitration Act (FAA) provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

---

[33]Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit A, Arbitrator's Final Award, pp. 13, 15.

[34]Respondents' Opposition to Application to Vacate Arbitration Award, Docket Entry No. 7, p. 25.

9 U.S.C. § 9.  Since petitioners have not demonstrated a basis for vacating, modifying, or correcting the arbitration award, the court concludes that it should be confirmed.[35]

---

[35]The parties agreed to "final and binding arbitration" by a member of the Judicial Arbitration and Mediation Service (JAMS). Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit C, 1998 Letter Agreement, pp. 10-11.  Petitioners have not objected to this court's authority to confirm the award.  The Fifth Circuit has held that when the parties agree to final and binding arbitration, invoke the district court's jurisdiction before arbitration, and then seek to confirm the award without objection by either party, the parties' implied consent to confirmation permits the district court to exercise jurisdiction. Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp., 220 F.3d 650, 653 (5th Cir. 2000) (citing T&R Enterprises v. Continental Grain Co., 613 F.2d 1272, 1278-79 (5th Cir. 1980)). Although petitioners did not invoke this court's jurisdiction before arbitration, other courts have held that where the party seeking to vacate the award "demanded arbitration and participated fully in the arbitration process . . . [and] agreed that such arbitration would be final and binding . . . [it is] disingenuous for [petitioner] to argue, now that an award has been issued against it, that it never agreed to enforcement of the results of arbitration." Booth v. Hume Pub., Inc., 902 F.2d 925, 930 (11th Cir. 1990).  Also, the JAMS Comprehensive Arbitration Rules and Procedures governed the arbitration proceeding.  Petitioners' Motion for Summary Judgment, Docket Entry No. 11, Exhibit A, Arbitration Award, p. 2.  JAMS Rule 25 states that "Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. or applicable state law."  JAMS Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com.  The court is therefore satisfied that the parties anticipated judicial confirmation of the arbitration award.  Cf. P&P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 867-68 (10th Cir. 1999) ("A party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in the contract. . . . Therefore the jurisdictional prerequisite of § 9 was satisfied here."); Citifinancial, Inc. v. Newton, 359 F. Supp.2d 545, 551 (S.D. Miss. 2005) (citing P&P Indus., Inc.).

## IV.  Conclusion and Order

Having considered all of petitioners' arguments in support of vacatur and finding no merit to any of them, Petitioners' Motion for Summary Judgment (Docket Entry No. 11) is **DENIED**.  Since there exists no basis to vacate the award, respondents' request to confirm the award (Docket Entry No. 7) is **GRANTED**, and the arbitration award will be confirmed.

**SIGNED** at Houston, Texas, on this the 2nd day of April, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE